Cherrington, J.
The plaintiff in error was plaintiff in the court of common pleas, and it brought its action in that court against Otis Ballard and John R. Long as surviving partners of the late firm of E. P. Buell & 'Co. John R. Long was not served with process, and the action in the court of common pleas proceeded against Otis Ballard alone.
The plaintiff’s petition riled in the court of common pleas contained four causes of action. Its first cause of action was founded upon a promissory note for the sum of $641.09, of date April 7, 1893, payable to the order of E. P. Buell & Co., signed by A. Beach as maker, and endorsed by E. P. Buell & Co. Its second cause of action was founded on a promissory note for $683.85, dated April 28, 1893, payable to the order of “myself”, signed by J. C. Harper as maker, and endorsed by J. O. Harper, E, P, Buell & Co, and J. R. Long. Its third cause of action was founded on a promissory note for the sum of $3656.30, dated June 16, 1893, payable to the order ofO. Ballard, cashier, and signed by E. P. Buell & Co. Its fourth cause of action was founded on a promissory note for the sum of $469.95, dated July 18, 1893, payable to the order of 0, Ballard, cashier, and signed by E. P. Buell & Oo.
Each cause of action in the plaintiff’s petition contained averments charging that Otis Ballard and John R. Long were members of the firm of E. P. Buell & Co. at the time the notes mentioned and the endorsements were made, as set forth in said several causes of action,
Otis Ballard filed an answer denying in substance that he was the surviving partner of the late firm of E. P. Buell & Company; denied that at the time the notes and endorse ments upon which the plaintiff brought its suit were made,he was a member of said firm of E. P. Buell & Company; denied that he ever was a partner in said firm or that he ever had any interest whatever therein as such partner; he denied *65 that he was indebted to the plaintiff in the sums set forth in the several causes of action stated in its petition.
At the October term of the court of common pleas of Pickaway county, a jury being waived,the case was submitted to the court upon the pleadings and the evidence. The court of common pleaB found in favor of the defendant, Otis Ballard, and a judgment w*as entered in said court accordingly. The plaintiff filed its motion for a new trial, which was overruled,and it took a bill of exceptions and filed a petition in error together with said bill of exceptions in this court, praying for a reversal of the judgment of the common pleas court.
The petition in error assigns several different grounds of error, but the only one which is insisted upon is,that the court of common pleas erred in its finding and judgment,and said finding and judgment is against the evidence and the manifest weight thereof.
The real issue made and tried in the common pleas court was whether Otis Ballard was a member of the firm of E. P. Buell & Oo, at the time the notes and endorsements were made upon which the plaintiff brought its suit.
It appears from the bill of exceptions that originally the firm of E. P. Buell & Co. was composed of E. P. Buell and John B. Long-; that E. P. Buell died about August 1893.
The plaintiff, in order to show that Otis Ballard was a member of the firm of E. P. Buell & Company at the time the obligations sued upon were made, offered to prove that a written contract was entered into between the original firm of E. P. Buell & Company and Otis Ballard,and one J. A. Hawkes. The plaintiff was not able to produce the original contract between the parties. It however, took the deposition of John G. Beeves and John B. Long,who both testified that they were well acquainted with the hand writing of E. P. Buell & Co., Otis Ballard and J. A. Hawkes; that they had each had business transactions with them and had seen *66 them write their names frequently, and that they had in their possession a contract with the names of these parties appendedjto it; that they had made a copy from said contract, which jcopy they had compared with the original and found it to be a true copy. This copy was retained by Mr, Reeves, and the original was turned over by Long to one J, O. Harper who had been appointed Receiver of E. P. Buell &jOompany after the death of E. P. Buell. At the time Reeves’ deposition was taken,he refused to attach the copy which he had in his possession to his deposition, but the notary who took his deposition made a copy from the copy in Reeves’ possession which it was agreed by counsel was a true copy of the copy in Reeves’ possession. J. O. Harper denied upon the trial of the case that he had ever seen the contract in question,or had any knowledge of it.
This copy was admitted in evidence by the court of common pleas over the objection of defendant, and the defendant now insists that the lower court erred in admitting it,
'Whether the court of common pleas erred in the admission of this copy or not, or whether it erred in finding that the plaintiff had used due diligence to discover the original contract before resorting to secondary evidence, we are not called upon to determine, for the question is not properly raised before us in this court. We must assume, however, ¡that the court did not err in these respects.
This contract which the plaintiff offered in evidence was ■dated April 2, 1892, It is said in argument that the execution and delivery of this contract was denied by defendant Ballard. We do not think, however, that the evidence ■shows that Ballard made an unqualified denial of this contract, He said, “I have, no recollection, no knowledge of such a contract.”
As we have already seen, Reeves and Long testified positively that they saw the original contract, and that the signatures of E. P. Buell & Go., Otis Ballard and J. A, Hawkes *67 were signed to it, and that they were well acquainted with the signatures of these parties. Ballard says that a contract was entered into between E. P. Buell & Co., James Ballard and himself September 18th, 1889, which contract he produced and offered in evidence. This contract in some respects is very much like the one offered in evidence by the plaintiff. Ballard says that shcrtly after the contract of September 18th, 1889, was entered into,a new contract was made which was substantially the same as the first one with the exception that the name of J. A, Hawkes was added thereto; that this contract was left in the possession of IJawkes. It was not produced upon the trial, and Ballard claimed that he did not know where it was.
One of the recitals contained in the contract of April 2nd, 1892, is to the effect that $1000.00 had that day been advanced by Otis Ballard and James A. Hawkes to E. P. Buell & Co. Ballard testified that he and Hawkes did advance to E. P. Buell & Oo, $1000.00 on that day. There was further evidence offered by the plaintiff of admissions made by Ballard of the existence of a contract between E. P. Buell & Oo., J. A. Hawkes and himself, in which he and Hawkes were to have a share of the profits, but not to be liable for any of the losses. The evidence shows that when these conversations were had with Ballard,or with Mr.Faurot in the presence of Ballard, that the name of James was not mentioned; that the persons who were spoken of as being members of the firm of E. P. Buell & Co. were E. P. Buell, John R. Long, J A. Hawkes and Otis Ballard.
After having carefully examined all of the evidence bearing upon this question, we are clearly of the opinion that the defendant, Ballard, executed the contract of date April 2nd, 1892.
We have then in this case two contracts, one proven and the other admitted, and the construction of these two contracts must determine the question whether Otis Ballard *68 was a member of the firm of E, P. Buell & Co., or not.
It is not claimed that they were partners as between themselves, but that they were such as to third persons who dealt with them,
The contract of 1892, among other things, recites that E. P. Buell and J. R. Long, doing business under the name of E. P. Buell & Co, have a contract for and are now building the L. & H. Railway Co. with certain branches thereto, and that the capital stock and mortgage bonds of said company, amounting to $1,500,000.00 each, have been deposited with O. Ballard of the First National Bank of Cireleville, Ohio, as Trustee for said E. P. Buell & Co, and said Railway Co.; that said Buell & Co, have leases and options on certain coal, oil and iron land; that said Buell & Co, have contracts with the Standard Investment Company of New York for the sale of the bonds of the Railway Company on completion of the road in sections of five miles each, and also for the sale of the bonds of the Coal Company. The contract then proceeds as follows:
“Whereas, E. P. Buell & Co. have put into the construction of said Railway and for cash expended in the Coal Company, a large amount of money, which has been furnished by themselves and their friends, Otis Ballard and James A. Hawkes.
“Now, therefore: In consideration of advances heretofore made and for one thousand ($1000) dollars made this day by Otis Ballard and James A, Hawke3 of Cireleville, Ohio, we, E. P. Buell & Co., agree and do assign to Otis Ballard and James A. Hawkes a full one half i-|) interest in all of the net profits arising out of the construction of said Railway and one half (-|) of all the net profits, arising from the coal, iron and oil company, without any individual liability of said Otis Ballard and Jas. A. Hawkes, who expressly disclaim any liability in and for debt.
“The division of profits shall be settled in manner and form, to-wit: After first deducting the actual cost of construction of said Railway, and the cost of opening and preparing for development the land of the Coal Company and *69 paying the options on the said lands, the net profits shall be equally divided, one (-£) half to E. P. Buell & Co. and one (-|) half to said Otis Ballard and James A. Hawkes or their legal representatives.
“The division of the profits above referred to shall be in cash, lands, bonds or stocks, as contemplated in the contracts with the standard Investment Company of New York.”
The contract of September 18th, 1889, among other things,recites that for the consideration hereinafter named E. P. Buell & Company have given to James Ballard and Otis Ballard $15,000.00 of the first mortgage bonds of the L. & H. Railway Company,and it authorizes Otis Ballard, the Trustee of E. P. Buell & Company and said Railway Company, to withhold from the first installment of said bonds to be delivered to said E. P. Buell & Company $15,000.00 of the same for said James and OtiB Ballard. Then follows his clause:
“And as further inducement for the said consideration hereinafter named, said E. P. Buell & Co. have agreed, and do hereby agree to give to said party of the second part one fourth (¿) part of the net profits they may gain or make in the execution of the said contract with said Railway Company for the construction of said Railroad (which they estimate will be not less than $400,000.00),but this delivery of the said one fourth (¿-) of the net profits made in the construction of said road, is not to constitute the said party of the second part a partner in the said contract. The said $15,000.00 of bonds which by the terms of this contract are to be delivered to said party of the second part and are to be theirs absolutely, are to be taken as a portion or part of the one fourth of the net profits of the execution of said premises.”
The contract then provides for a division of the successive installments of bonds between the parties to the contract, and authorizes O. Ballard, Trustee, to deliver to the party ©f the second part “his proportionate share of said bonds, such share being the one-fourth part of said profits as said *70 E. P. Buell & Co. shall deem to be within the limits of said one fourth part of the net profits of the building said road so far as the same may be then constructed.”
Then follows this clause:
‘‘In consideration of the foregoing and for which the said E. P. Buell & Co. makes this contract, the said party of the second part agrees and binds himself to endorse for said E. P. Buell & Co. is to endorse a promissory note for said E. P, Buell & Co. the following of which is a copy,”
Upon reading this paragraph it is evident that the word “and” has been omitted,and we think it should be read in so that it would read as follows:
‘‘The said party of the second part agrees and binds himself to endorse for said E, P, Buell & Co., and is to endorse a promissory note.” &c. &c.
The contract then contains a copy of a promissory note for $8100,of date September 18th, 1889, signed by E. P. Buell & Co., and it further recites that Buell & Company were to give a chattel mortgage upon an engine and certain cars, but it does not provide to whom the mortgage shall be given,or state except by inference what it is to secure, The remaining part of the contract relates to the division of the profits.
The defendant, Ballard, also offered in evidence a contract between E. P. Buell & Co. and the L. & H. Ry. Co., by which he, Ballard, was appointed Trustee for said Buell & Co. and Baid Railway Co. There is a receipt on this contract showing that certain stock and mortgage bonds of the Railway Co. had been placed in the hands of Ballard.
The evidence shows that at the time Ballard and Hawkes made these contracts, that Hawkes was the president and. Ballard the cashier of the First National Bank of Circleville, Ohio, and that they were both directors of said bank,
Both of these contracts provide that the defendant, Ballard, is to have a share of the net profits that may be made *71 out of the contract for the construction of the Lancaster & Hamden Railway, and both contracts provide that nothing in the contracts shall constitute Ballard to be a partner in the firm of E. P. Buell & Company.
It is claimed on behalf of Ballard that he had no interest in the firm of Buell & Company other than that of a creditor of the firm; that he furnished the firm with money and endorsed for it, and that the contract of 1889, which is the only contract offered in evidence that they'now admit, was made for the purpose of securing him as a creditor of that firm; it is claimed that in order to make him a member of the firm of Buell & Company, it is necessary that it be shown that he contributed something toward the advancement of the interest of the enterprise in which E. P, Buell & Company were engaged, and that this fact has not been shown. We think differently, and that by a fair construction of the evidence in this case, it is apparent that Ballard did contract to, and did furnish something valuable toward the advancement o the enterprise in which E. P. Buell & Company were engaged. Buell & Company were engaged in building a railroad. It was necessary for them to have money and credit. Ballard and Hawkes were directors of the plaintiff, one the cashier and the other its president. And it is evident that these contracts, and especially the one of 1889, were entered into by these parties by reason of the fact that Ballard was in a position where they believed that he could accommodate the firm of Buell & Company by furnishing it cash and endorsing its paper. As we have'seen by the contract of 1889, Ballard agreed to not only endorse the note of $8100, but to endorse for the firm of Buell & Company generally, and it will be" remembered that the contract of 1892 recites the fact of money having been heretofore advanced by Otis Ballard and J. A, Hawkes, and money advanced on that day by them. It seems to us that it is immaterial whether they placed their *72 money directly in the firm, or whether they contributed to the enterprise by endorsing for the firm. The act was the same; the money was furnished by Ballard and Hawkes to be üsed in that enterprise in whichever way it was raised.
We think that the evidence shows, and that these contracts show, that the defendant, Ballard, has clearly brought himself within the rule laid down by the supreme court in the case of Wood v. Vallette 7 Ohio St., 172, The third syllabus of that case, we think,is decisive of this case. It is as follows:
“That a contract between parties to share in the net profits of a business, to the carrying on of which they respectively contribute, necessarily makes them partners as to third persons dealing with the firm.”
We have already stated that the evidence shows that Ballard contributed cash, and that he agreed to endorse for the firm for an unlimited amount to assist it in carrying out its enterprise, and that he was to receive a share of the profits of the firm for so doing. This we think under the authority quoted makes him a partner as to third persons dealing with the firm. The case of Wood v. Vallette has not been reversed or modified.
The case of Harvey v. Childs,28 Ohio St., 319,has been referred to, and it was claimed on behalf of Ballard’s counsel that this case changed the rule adopted by the supreme court in the case of Wood v. Vallette,7 Ohio St., 172. We do not think so, and in fact the supreme court in the ease of Harvey v. Ohilds disclaim any intention to reverse or modify the case of Wood v. Vallette, and undertook to distinguish that case from the case of Wood v. Vallette, The case of Harvey v. Childs was, as the court remarked, in reference to a single transaction for which the money had been advanced and where no credit was contemplated. And it then remarked “in such case there is no ground for the implied authority to incur debts, such as exists in regard to a general trading business.” In this case the contracts *73 themselves show that the firm of E. P. Buell & Company were engaged in the building of a railway; that it was necessary to raise money for that purpose; that it was a continuing enterprise and not a single transaction, and that the making of the contracts themselves not only contemplated the obtaining of credit by the firm of Buell & Company, but it appears from the contract of 1889 that that was one of the purposes and the main purpose for which the contract was entered into. So that we do not think that the case of Harvey v. Childs is applicable to the case under consideration.
Clarence Curtain and Albert Douglas, for Plaintiff in Error.
Smith & Morris, Abernethy & Folsom, and H. Bodman, tor Defendant in Error,
The judgment of the court of common pleas will be reversed and the cause remanded for a new trial.